(65 South. 132)

Nos. 19,804, 19,532.

COPPING v. TERMINI.

(April 27, 1914.)

*(Syllabus by the Court.)*

DIVORCE (§§ 37, 298*)—DECREE OF SEPARATION—GROUNDS.

It is no doubt true, as a rule, that the wife must follow the husband and accept the home that he offers her, but, where the condition of a wife's health is such that she is unable to assume the charge of a home, to provide therein for the needs and comfort of her husband, her child, or herself, and her husband, by reason of the inadequacy of his means, is unable to provide for her the care and assistance that she needs, there is no law, human or divine, which justifies him in requiring her to attempt the impossible, or which imposes upon her the obligation to leave a home in which her mother is able and willing to afford her such care and assistance; and her failure to follow her husband, under such circumstances, is an insufficient ground upon which to predicate a judgment in his favor of separation from bed and board, or a judgment giving to him the unqualified custody of the minor child, a girl of tender years.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 27, 107–134, 136–138, 781–787; Dec. Dig. §§ 37, 298.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Mrs. Camille Copping against Anthony Termini. From judgments for defendant, plaintiff appeals. One judgment affirmed in part and reversed in part, and the other judgment affirmed.

Sol. Weiss, of New Orleans, for appellant. George J. Untereiner, of New Orleans, for appellee.

MONROE, C. J. Plaintiff has appealed from two judgments; the one, dismissing her rule for alimony, pendente lite; the other, rejecting her demand for divorce, decreeing a separation from bed and board, on the reconventional demand of the husband, and awarding him the custody of their child, a girl six years of age.

In her original petition, filed on January 26, 1912, plaintiff prayed for separation a

mensa et thora, upon the ground of neglect, cruel treatment, and failure of defendant to support her, according to his ability, beginning, as she alleges, about a year after the marriage, in 1903, and continuing up to the time of the bringing of the suit; and those allegations are elaborated in a supplemental petition. She then, in October, 1912, filed supplemental petition, in which she prays for a divorce a vinculo matrimonii, upon statutory grounds. Defendant denies the allegations made by plaintiff, charges her with cruel treatment and slander, and alleges that she has an ungovernable temper and is insanely jealous. He also alleges that, during the few years preceding the institution of this suit, he was compelled, in order to appease plaintiff, to live in one side of a double cottage, the other side of which was occupied by plaintiff's mother, from whom he rented; that, being there subjected to indignities of which he became weary, he on January 15, 1912, notified his mother-in-law, verbally, of his intention to move, on February 1st following, "and confirmed said notice, later, in writing, and wrote to his wife, on January 27, 1912, that he would move from the house he was occupying, on February 1, 1912, and would require her to follow him; and, if she refused or neglected so to do, would institute divorce proceedings against her; * * * that, through the machinations of his said wife and her mother, and in order to forestall the carrying into execution of said notice to move and its consequent threat, as above set forth," she (the wife) "brought this suit," etc. He therefore sets up a demand in reconvention for separation a mensa et thoro and for the custody of his child.

The evidence shows that defendant has been employed, as salesman, in a large retail establishment, from the time of his marriage, and has received a salary of $15 per week, to which has been added a small commission, which has increased his earnings to about

$16.50 per week; that it has been his habit, up to within a few days of the institution of this suit, to turn over his pay envelope, containing the $15, to his wife, who would return him $2, retaining the balance of $13, from which $2.50 per week were laid aside for the rent, and a like amount for the payment of the installments upon their furniture, leaving a balance of $8 wherewith to pay household expenses, including fuel, lights, marketing, groceries, etc., and to provide clothing for the wife and child. It also shows that, for several years prior to the institution of this suit, plaintiff's health was bad, and that they had lived in one side of a double cottage which was owned or leased, and the other side of which was occupied, by plaintiff's parents.

Plaintiff's mother being asked, "What was the reason that your daughter lived in that half house?" replied, "Because she was a sick woman, and she had no help, and I had to help her." At another time, she was asked, "What has been the health of your daughter during the past three years or more?" and she answered, "Oh, very sick." It also appears that there was an opening between the two tenements, so that they were really occupied as one residence, and that, by reason of the sickness and consequent helplessness of the plaintiff, the burden of housekeeping fell mainly upon her mother, who did the marketing and cooking for both families (her own family consisting, as we understand the testimony, only of her husband, who was away a great part of the time, and herself), and, not only did the work, but bore most, if not all, of the expense. The meals were therefore prepared, for the most part, upon her side of the house, and her daughter and little granddaughter, who, at the beginning of the arrangement, was about four years old, naturally enough, spent a great deal of their time there. Plaintiff's mother also supplied her and her little girl with

clothing, paid bills for medical and dental services, and aided and comforted her in various ways. Defendant, in the meanwhile, contributed all that he could, in the way of money, to the support of his family, and was not informed, and does not seem to have realized, how much more they needed, or how that need was supplied; and being, in a measure, forced to accept the hospitality of his wife's parents, and to go out of his own home in order to find his wife and child and to get his meals, the situation became irksome to him, and, finally unbearable. He therefore determined to find a home elsewhere. His allegation that he notified his mother-in-law, verbally, and his wife, in writing, of his intention, and demanded that his wife follow him, under penalty of a suit by him for divorce, and that this suit was instituted by her in order to forestall such action on his part, is not sustained by the evidence, since his mother-in-law denies that he gave verbal notice of his intention to move, and his letter to his wife bears date January 27, 1912, whereas this suit had been instituted on the preceding day. There is a good deal of testimony in the record, and other that was properly excluded offered to show, that, prior to and during the period to which we have been referring, defendant was rough and unkind to his wife and, at times, used very harsh language towards her; and there is also testimony to the effect that, at least on one occasion, she was exceedingly intemperate in her language and conduct towards him. We think that much allowance should be made for both of them, and that they are both entitled to sympathy, but that, of the two, the position of the plaintiff was the hardest, since she was sick and unstrung, and defendant does not seem, at all, to have taken that into consideration. It is no doubt true, as a rule, that the wife must follow the husband and accept the home that he offers her; but where, as in this instance, the condition of the wife's health is such that she is unable, physically and mentally, to assume the care of a home, to provide therein for the needs and comfort of her husband, her child, or herself, there is no law, human or divine, which justifies him in requiring her to attempt the impossible, or which imposes upon her the obligation to leave a mother, who is able and willing to afford her that aid and comfort which her husband's means do not enable him to afford. The evidence does not entitle plaintiff to a judgment of separation from bed and board and, still less, of divorce, and it does not entitle defendant to a judgment of separation from bed and board, and, still less, to a judgment awarding him the unqualified custody of their only child, a little girl. We are therefore of opinion that the demands of both litigants, with respect to separation and divorce, should be rejected, and that the child should be allowed to remain with its mother, for the present, without prejudice to the rights of either parent, with respect to its permanent custody, and subject to the right of the father to see and take it, temporarily, into his custody, upon such conditions as he and the mother may agree on, or as may hereafter be prescribed by the district court.

The rule for alimony is not to be found in either of the transcripts, and we have no means of knowing from what date the alimony was claimed. The judgment dismissing the rule was signed on June 10, 1912. Under ordinary circumstances, it might be regarded as the logical consequence of the conclusion that we have reached that the defendant should be condemned to pay, within the limits of his means, the amount required for the support of his wife and child, from the date of the demand therefor, to the present time; but we have seen that the income of

the defendant is slender, we realize that he must pay the expense of this litigation, and we conclude that the judgment dismissing the rule for alimony should be affirmed.

It is therefore ordered that the judgment appealed from, dealing with the respective demands of the litigants for separation and divorce, be affirmed, in so far as it rejects the demand of the plaintiff; and reversed, in so far as it decrees a separation from bed and board, in favor of the defendant, whose demand, in that respect, is also rejected. It is further ordered that said judgment be reversed, in so far as it awards the custody of the minor child to the defendant, and it is now decreed that the child be allowed to remain with the plaintiff, for the present, without prejudice to the rights of either parent, with respect to its permanent custody, and subject to the right of the father to see, and take it, temporarily, into his custody, upon such conditions as he and the mother may agree on, or, as may hereafter be prescribed by the district court. It is further decreed that the judgment denying the plaintiff alimony be affirmed.

It is further decreed that the defendant pay all the costs of this litigation.

O'NIELL, J., takes no part.